IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BAKER DC, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL LABOR RELATIONS BOARD,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 1:15-cv-00571
Judge Amy Berman Jackson

## DEFENDANT NATIONAL LABOR RELATIONS BOARD'S OPPOSITION TO PLAINTIFF BAKER'S MOTION FOR TEMPORARY RESTRAINING ORDER AS TO IRREPARABLE HARM

The Plaintiff, Baker DC, LLC ("Baker"), has moved this Court to enjoin an ongoing

National Labor Relations Board ("NLRB" or "the Board") election proceeding in which the

United Construction Workers Local Union No. 202- Metropolitan Regional Council of

Carpenters ("the union") seeks to represent a portion of Baker's employees. Because Baker has

failed to demonstrate any irreparable harm caused by its participation in the election proceeding,

it is not entitled to a temporary restraining order.[1]

---

[1] The Board has carefully considered the Court's request that it stay continuing implementation of the Rule, but respectfully, declines to do so. The Rule at issue here is different in significant respects from the notice-posting rule at issue before this Court in 2011, when the Board agreed to delay that rule's effective date. The challenges to the earlier notice-posting rule concerned the Board's very authority to require notice posting by persons who were not parties to either a representation or unfair labor practice case. Even the Court of Appeals, which set aside the 2011 notice-posting rule, did not question that the Agency could require notice posting in representation cases like the one at issue in this case. *See Nat'l Ass'n of Mfrs.* v. *NLRB,* 717 F.3d 947, 959 n.19 (D.C. Cir. 2013) (''Our conclusion here does not affect the Board's rule requiring employers to post an election notice (which similarly contains information about employee rights) before a representation election[.] Because the failure to post the required election notice does not constitute an unfair labor practice but may be a basis for setting aside the election, *see id.* § 103.20(d) [of the Board's prior rules], the rule does not implicate § 8(c).'').

**FACTS**

In enacting the National Labor Relations Act (NLRA or Act), Congress assigned the National Labor Relations Board (NLRB, Board, or Agency) two principal responsibilities: preventing unfair labor practices, 29 U.S.C. § 160, and resolving questions concerning representation, *id.* § 159. The NLRA grants employees the right "to bargain collectively through representatives of their own choosing . . . and to . . . refrain from . . . such activit[y]." 29 U.S.C. § 157. Sometimes employees and their employer voluntarily agree that an appropriate unit of employees should be represented for purposes of collective bargaining (typically, by a labor union). But when they do not agree, Section 9 of the Act, *id.* § 159, gives the Board authority to conduct a secret ballot election and certify the results.[2]

Pursuant to the Board's rulemaking authority under Sections 6 and 9(c) of the Act, 29 U.S.C. §§ 156, 159(c), the Board recently issued a final rule amending its election procedures. *See Representation—Case Procedures*, 79 Fed. Reg. 74308 (Dec.15, 2014) (hereinafter the Rule or the amendments).The Rule took effect on April 14, 2015, and makes some 25 changes, summarized at 79 Fed. Reg. 74308-10. As the Board carefully explained, these changes provide targeted solutions to discrete, specifically identified problems, enabling the Board to better fulfill its duty to protect employees' rights by fairly, accurately, and expeditiously resolving questions of representation. The changes also advance the goals of efficiency, transparency, uniformity,

---

All the issues that Baker seeks to have this Court decide on an emergency basis—whether the Board may require the posting of a government supplied notice or the disclosure of personal information about potential voters; whether the Board may limit the rights of parties to present evidence in representation proceedings; and whether the election procedure afforded a reasonable opportunity to respond to critical campaign issues – are issues that courts have decided in normal course for decades. As we explain below, Baker suffers no irreparable harm if it adheres to these normal review procedures.

[2] In accord with Section 3(b) of the Act, 29 U.S.C. § 153(b), the Board has delegated authority to decide representation cases to the Agency's regional directors, subject to discretionary Board review. *See* Regional Directors—Delegation of Authority, 29 Fed. Reg. 3911 (May 4, 1961).

and adapting new technology to further the Act's purposes. *Id.* at 74315. As the Board noted, many of these changes are uncontroversial. *See* "Features of the Final Rule as to Which There Is No Substantive Disagreement" between the Board majority and dissent. *Id.* at 74430.

In the instant case, Baker, a Washington, D.C. construction company, seeks to have this Court enjoin an election proceeding initiated by the union's filing of its representation petition on the same day the Board's new Rule became effective. (Exhibit 1 to Baker's Motion for Temporary Restraining Order (Dkt. No. 3-2) at 2) ("Ex. 1"); *see also* http://www.nlrb.gov/case/05-RC-150123 (NLRB electronic docket).) The petition (Case No. 5-RC-150123) was filed with the Board's Region 5 office in Baltimore, Maryland, and asserts that the union has substantial support from a bargaining unit consisting of Baker's laborers and carpenters. (Ex. 1 at 10.) The petition therefore requests that the NLRB proceed under its authority to resolve questions concerning representation.(*Id.*)  Soon after the petition was filed, the Region issued a Notice of Representation Hearing, setting the pre-election hearing for April 23, 2015,[3] and informed Baker of the requirements, *inter alia,* to file a Statement of Position by noon on April 22 and post a Notice of Petition for Election by April 17. (*Id.* at 5, 6, 13.); *see* 29 C.F.R. § 102.63, 79 Fed. Reg. 74480-82. On April 16, Baker filed a motion for a 7-day postponement of the pre-election hearing, as well as the due date for filing a statement of position. That motion was granted on April 17. The pre-election hearing is now scheduled for April 30, and the statement of position is due on April 29.

On April 17, Baker filed the instant complaint against the NLRB. Count I claims that certain of the Rule's amendments exceed the Board's statutory authority by compelling disclosure of confidential, personal, and private information about Baker's employees. (Compl.

---

[3] Unless otherwise stated, all dates are in 2015.

at 5-6.) Count II asserts that other Rule amendments unlawfully restrict Baker's right to present evidence in the representation hearing, in violation of Section 9 of the Act, 29 U.S.C. § 159, and the Fifth Amendment of the U.S. Constitution. (Compl. at 6-7.) Count III alleges that portions of the Rule violate Baker's free speech rights under the First Amendment and Section 8(c), 29 U.S.C. § 158(c). (Compl. at 7-9.) Finally, Count IV avers that certain of the Rule's provisions are arbitrary and capricious, *see* 5 U.S.C. § 706(2)(A). (Compl. at 9-11; ¶ 28.) The Complaint broadly seeks to "[v]acate and set aside the new Rule." (Compl. at 11.)

Baker also filed a motion for a temporary restraining order. While the Complaint seeks to vacate the rule in its entirety (although not actually challenging many of the amendments), the motion seeks, "[i]n particular . . . a temporary stay of enforcement of the new Rule in connection with the petition filed by the United Construction Workers Local Union No. 202-Metropolitan Regional Council of Carpenters."[4] Because Baker cannot demonstrate irreparable harm from following the statutorily-prescribed route for review of representation case issues, its motion for a temporary restraining order should be denied. Nor can Baker demonstrate the additional factors required for entry of a temporary restraining order, and pursuant to the Court's direction, the Board will address those additional factors in a response to be filed on Tuesday, April 21, by 10:00 am.

---

[4] Indeed, if any temporary restraining order issues, it should apply only to Baker's representation proceeding, not *all* representation cases now pending under the Board's Rule. *See, e.g., Russell-Murray Hospice, Inc. v. Sebelius*, 724 F. Supp. 2d 43, 60 (D.D.C. 2010) ("injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs") (quotation omitted). The proposed order submitted by Baker (Dkt. No. 3-4) (which, of course, we dispute should be entered at all), appears to enjoin the Rule as to all employers, and accordingly is too broad and should not be entered as drafted.

## ARGUMENT

### A.  Baker Must Demonstrate Actual Harm that Is Beyond Remediation

This Court applies the same standards to temporary restraining orders and preliminary injunctions. *Hall v. Johnson*, 599 F.Supp.2d 1, 3 n.2 (D.D.C. 2009) (citing *Experience Works, Inc. v. Chao*, 267 F.Supp.2d 93, 96 (D.D.C. 2003)). Accordingly, like a preliminary injunction, a temporary restraining order "is 'an extraordinary remedy that may only be awarded *upon a clear showing* that the plaintiff is entitled to such relief.'" *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008)) (emphasis added).

To warrant a temporary restraining order, a moving plaintiff must establish: "(1) the plaintiff has a substantial likelihood of success on the merits; (2) the plaintiff would suffer irreparable injury were an injunction not granted; (3) an injunction would [not] substantially injure other interested parties; and (4) the grant of an injunction would further the public interest."[5] *Northern Air Cargo v. U.S. Postal Service*, 756 F.Supp.2d 116, 123 (D.D.C. 2010)

---

[5] In the past, courts sometimes considered these four factors on a sliding scale, whereby a strong showing on one factor could make up for a weak showing on another factor. *See Davis,* 571 F.3d at 1291-92 (explaining sliding scale analysis). However, as the D.C. Circuit has recognized, it is highly questionable whether this sliding scale approach survived the Supreme Court's decision in *Winter*. *See Sherley*, 644 F.3d at 392-93; *see also Davis*, 571 F.3d at 1295 (Kavanaugh and Henderson, J.J., concurring) (noting that "this Circuit's traditional sliding-scale approach to preliminary injunctions may be difficult to square with" *Winter*). In *Winter*, the Supreme Court found that issuing a preliminary injunction based on "only on a *possibility* of irreparable harm" instead of a *likelihood* of such harm to be "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter,* 555 U.S. at 21 (emphasis added). The D.C. Circuit has yet to explicitly decide whether *Winter* entirely eliminated the sliding scale test. *See, e.g.*, *Aamer v. Obama,* 742 F.3d 1023, 1043 (D.C. Cir. 2014); *Am. Meat Inst. v. U.S. Dept. of Agriculture*, 746 F.3d 1065, 1074 (D.C. Cir. 2014), *vacated for rehearing en banc*, 760 F.3d 18 (D.C. Cir. July 29, 2014). As stated below, at a minimum, a plaintiff must show a likelihood of irreparable harm, and not just a possibility. *See Winter*, 555 U.S. at 21-22; *see also Defending Animal Rights*

(citing *Ark. Dairy Coop. Ass'n v. United States Dep't of Agric.,* 573 F.3d 815, 821 (D.C. Cir. 2009) (internal citations omitted). "[T]he movant has the burden to show that all four factors . . . weigh in favor of the injunction." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009); *see also In re Navy Chaplaincy,* 738 F.3d 425, 428 (D.C. Cir. 2013) (requiring proof that all four prongs of preliminary injunction standard be met before injunctive relief can be issued). No injunctive relief may be ordered unless plaintiffs "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter,* 555 U.S. at 22 (emphasis in original). Accordingly, if the plaintiff fails to establish sufficient irreparable harm, a court may deny a motion for preliminary injunction and not address the remaining three factors. *Defending Animal Rights*, 786 F.Supp.2d at 377; *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 747 (D.C. Cir.1995).

In the particular context of attempts to enjoin an NLRB representation case, numerous courts have explained the sheer magnitude of the plaintiff's irreparable-harm burden. The seminal case is *Leedom v. Kyne*, where the Supreme Court found that district courts do not even have subject-matter jurisdiction to review NLRB representation cases unless "the absence of jurisdiction of the federal courts [would] mean[] a sacrifice or obliteration of a right which Congress has created.'" 358 U.S. 184, 190 (1958) (quoting *Switchmen's Union v. Nat'l Mediation Bd.*, 320 U.S. 297, 300 (1943)).[6] "A [*Kyne*] plaintiff must show . . . that barring

---

*Today and Tomorrow v. Washington Sports & Entertainment, LP*, 786 F.Supp.2d 373, 376 (D.D.C. 2011).

[6] As we will explain in more detail in our supplemental opposition to be filed by April 21, *Kyne* also imposes a daunting requirement for Baker to demonstrate likelihood of success on the merits: the plaintiff must show that "the agency has acted in excess of its delegated powers and contrary to a specific prohibition which is clear and mandatory." *Nat'l Air Traffic Controllers Ass'n,* 437 F.3d at 1263 (quotations omitted). The D.C. Circuit has repeatedly emphasized how difficult it is for plaintiffs to establish jurisdiction under *Kyne*, describing its requirements as

review by the district court would wholly deprive [it] of a meaningful and adequate means of vindicating its statutory rights." *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006) (second alteration in original, quotation omitted); *see also Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 43 (1991) (there can be no "sacrifice or obliteration" of a right under *Kyne* where "a meaningful and adequate opportunity for judicial review" is available).[7]

Moreover, it is generally recognized that the claimed deprivation must satisfy two requirements. First, injury "must be both certain and great" and "actual and not theoretical." *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). The injury must be of "such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *CFGC*, 454 F.3d at 297 (quoting *Wisc. Gas*, 758 F.2d at 6740). Second, the injury must, in fact, "be beyond remediation." *Defending Animal Rights*, 786 F.Supp.2d at 377 (citations and internal quotation marks omitted). As the D.C. Circuit has noted, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Wisc. Gas*, 758 F.2d at 674 (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

### B. There Can Be No Irreparable Harm to Baker Because It Can Refuse to Comply with the Rule's Requirements That It Finds Objectionable Without Penalty Under the NLRA

To understand why no irreparable harm can befall Baker here, it is crucial to understand the scope and limitations of a Section 9 representation case. It is *not* an unfair labor practice case,

---

"nearly insurmountable," *U.S. Dep't of Justice v. FLRA*, 981 F.2d 1339, 1343 (D.C. Cir 1993), and "extraordinarily narrow," *Hartz Mountain v. Dotson*, 727 F.2d 1307, 1312 (D.C. Cir. 1984).

[7] The same requirements must be satisfied for district courts to exercise jurisdiction over claimed constitutional violations in representation cases. *Squillacote v. Teamsters Local 344,* 561 F.2d 31, 37 (7th Cir. 1977) (citing *McCulloch v. Libbey-Owens-Ford Glass Co.*, 403 U.S. 916, 917 (D.C. Cir. 1968), and describing the two tests as "alike").

wherein the Board may enjoin the commission of unfair labor practices and award affirmative relief such as backpay. In such cases, Section 10(e) and (f) of the NLRA provide for review, in the appropriate Court of Appeals, of "a final order of the Board." 29 U.S.C. § 160(e), (f).

The sole question in a Section 9 representation case, by contrast, is whether a labor organization may be certified as the representative of a bargaining unit of employees. If a union prevails in an election, and that election is upheld on Board review, the Board will issue a certification of representative stating that the union (here, Local 202) represents a majority of employees in the bargaining unit. A certification of representative is not an injunction, nor is it a final order; it carries no coercive force whatsoever; and it is not subject to ordinary judicial review.[8]

Consequently, any employer which disagrees with the Board's decision to certify a union can simply refuse to bargain, forcing the union to file an unfair labor practice charge, or, in the absence of a charge, permit the employer to ignore the results of the election. *See Hartz Mountain Corp. v. Dotson,* 727 F.2d 1308, 1311 (D.C. Cir. 1984) ("'Congress declared that the person aggrieved by a Board representation decision is obliged to precipitate an unfair labor practice proceeding as a means of securing review in the appellate courts'") (quoting Robert A. Gorman, Basic Text on Labor Law: Unionization and Collective Bargaining 60 (1976)). In such cases, the employer may file a petition for review in a circuit court. Section 9(d) of the NLRA provides that when a certification has become the basis for a subsequent unfair labor practice

---

[8] In *American Federation of Labor v. NLRB*, 308 U.S. 401, 409-11 (1940), the Supreme Court held that even a certification, which terminates a representation case after an election has been held, does not constitute a "final order of the Board" within the meaning of section 10(e) and (f). Therefore, "as a general rule, Board orders emanating from representation proceedings are not directly reviewable in court." *Hartz Mountain*, 727 F.2d at 1310. *A fortiori*, interlocutory decisions that do not even terminate the representation case are equally unreviewable. *E.g. Boire v. Miami Herald Pub. Co.*, 343 F.2d 17, 20 (5th Cir. 1965) (overturning injunction that had blocked counting of ballots in ongoing representation case).

order, and that order is before an appropriate Court of Appeals under section 10(e) or (f), the

certification itself is also open to review. 29 U.S.C. § 159(d); *see Canadian Am. Oil Co. v.*

*NLRB*, 82 F.3d 469, 471 n.1 (D.C. Cir. 1996) ("Although a Board's decision in a certification

proceeding is not directly reviewable in the courts, an employer may challenge a certification

decision indirectly by refusing to bargain with the union and then raising its election objection in

the ensuing unfair labor practice proceedings.").

Nothing about this case compels an exception from these principles. Indeed, the principal

harms alleged to be irreparable by Baker in this motion relate to the alleged "compelled speech"

caused by the requirement that it post an initial notice of petition for election (Petition Notice),

and the prospective provision of employee information to Local 202. Mem. at 11-12. But the

Rule is not self-enforcing; Baker faces no fines or other punishment if it fails to comply with

what it deems to be objectionable provisions.[9] It can simply state its objections and decline to

comply with those requirements in order to test their validity. *See, e.g., NLRB v. Wyman-Gordon*

*Co.*, 394 U.S. 759 (1969) (where the employer declined to disclose employee home addresses, as

the Board required, the election was set aside as a result and, in subsequent proceedings, the

Board's subpoena for the required employee information was upheld). If Local 202 prevails in

the election despite Baker's noncompliance with the Rule's requirements, any error by the Board

in imposing those requirements will have been harmless. *Ozark Auto. Distributors, Inc. v. NLRB*,

779 F.3d 576, 582 (D.C. Cir. 2015) (harmless error). If Baker prevails and the union files a post-

election objection based on Baker's noncompliance with the Rule, a rerun election may be

---

[9] As made clear in the Board's rule and explained in the Board's motion for summary judgment
in the *Chamber of Commerce* matter (No. 15-cv-00009; Dkt. No. 23), failing to post the Petition
Notice is not an unfair labor practice and is only possibly grounds for running a re-election. *See*
79 Fed. Reg. at 74480 (29 CFR § 102.63(a)(2)) (failure to post only "*may* be grounds for setting
aside the election whenever proper and timely objections are filed.") (italics added).

ordered. If Local 202 then wins the second election, the validity of the rule may be reviewed by Baker's refusing to bargain.[10] Past courts have used Section 10(e) and (f) review to resolve challenges to the Board's requirements that notices be posted before an election,[11] to review the Board's discretionary decisions to defer deciding issues of supervisory status until after an election,[12] and to resolve controversies over whether a party had a meaningful opportunity to engage in campaign speech.[13] In addition, courts have used their power to enforce Board subpoenas to resolve challenges to its existing voter list requirement.[14] Baker offers no explanation as to why this same method will not suffice here.

Likewise, Baker's other objections to the Rule, such as its supposed denial of an "appropriate hearing", Mem. at 7-9, are properly reviewed following the conclusion of the

---

[10] There is no possibility of a case becoming "stuck" in an infinite loop of union losses and rerun elections. In a second election, there will be no initial notice of petition for election or required list of employees submitted with a statement of position, and Regional Directors are under standing orders to create the final voter list themselves, by subpoena if necessary. National Labor Relations Board, Casehandling Manual Volume Two: Representation Proceedings § 11312.9, available at http://www.nlrb.gov/sites/default/files/attachments/basic-page/node-1727/CHM2-Sept2014.pdf (Sep. 2014). The validity of the Rule's changes to the final voter list will be properly in issue in a subpoena enforcement proceeding. *NLRB v. Wyman-Gordon, Inc.*, 394 U.S. at, 768 (enforcing a Board subpoena for the contents of a voter list).

[11] *Pannier Corp., Graphics Div. v. NLRB*, 120 F.3d 603, 606 (6th Cir. 1997).

[12] *NLRB v. Dickerson-Chapman, Inc.*, 964 F.2d 493, 496-97 (5th Cir. 1992).

[13] For instance, in circumstances where a party has made intrinsically believable misrepresentations that the other side did not have an opportunity to respond to prior to the election, the Sixth Circuit has repeatedly found (contrary to Board precedent) that the lack of time to engage in counter-speech may constitute possible grounds for setting aside an election. *See, e.g., NLRB v. St. Francis Healthcare Centre*, 212 F.3d 945 (6th Cir. 2000); *NLRB v. Gormac Custom Manufacturing, Inc.*, 190 F.3d 742, 747-48 (6th Cir. 1999). *Compare Midland National Life Insurance Co.*, 263 NLRB 127, 132 (1982) (holding that campaign misstatements - regardless of their timing - are generally insufficient to interfere with an election, unless they involve forged documents that prevent employees from identifying the statements as campaign propaganda).

[14] *Wyman-Gordon*, 394 U.S. at 768.

representation case.[15] The types of decisions at issue—the due date and required contents of Baker's Statement of Position (the representation-case equivalent of an Answer), notices of petitions, hearings and elections, whether to admit or exclude evidence, and so on—are garden-variety interlocutory orders, the sorts of orders that every district judge issues on a daily basis. And there is probably no single rule so familiar to litigation as the idea that interlocutory orders of a tribunal, when timely objected to, may be reviewed for prejudicial error once a final judgment issues.[16] The legal system would grind to a halt if trials had to await this sort of appellate micromanagement every time the judge made a ruling. *Cf. In re Irving*, 600 F.2d 1027, 1031-33 (2d Cir. 1979) (where the district court's contempt order for failure to turn over privileged employee information was accorded interlocutory review only because the district court found criminal, not civil, contempt; otherwise the district court's order would have been carried with the case and reviewed in normal course).

The D.C. Circuit's recent decision in *Ozark Auto* illustrates that claims that a fair hearing was denied are adequately remedied through the ordinary processes of judicial review. In that case, which involved a post-election representation hearing, the hearing officer revoked an employer subpoena to a pertinent witness. 779 F.3d at 578-79. Subsequently, the Board certified the union. *Id.* The employer refused to bargain in order to test the union's certification, and ultimately convinced the D.C. Circuit that the Board's revocation of the subpoena was indeed

---

[15] For this reason, Baker's assertions of due process violations (Mem. at 7-9) do not support an injunction, as it may assert any objections it has regarding the conduct of the hearing at the conclusion of the representation case. Indeed, as noted, Baker does not even rely on these asserted deprivations in asserting that it will suffer irreparable harm. (*See* Mem. at 11-12.)

[16] "[T]he final judgment rule is the dominant rule in federal appellate practice." *Flanagan v. United States*, 465 U.S. 259, 270 (1984) (quoting 6 Moore, Federal Practice (2d ed. 1953)).

prejudicial error. *Id.* at 586.[17] Thus, if Local 202 prevails in an election and Baker feels that it

was denied due process during the pre-election hearing, or that the election campaign was overly

truncated, it may object to the outcome, and its objections will receive appropriate consideration

both before the Board and in the court of appeals.[18]

### C. Even if Baker Elects to Comply with the Rule, the Alleged First Amendment Injuries Do Not Qualify as Irreparable Harm

Baker asserts that certain of the Rule's provisions implicate its free speech rights (Mem.

at 2-3, 5-7), namely, the obligation to post a Petition Notice and the potential shorter timeframe

for the conduct of elections, and that the infringement of such First Amendment rights

constitutes irreparable injury. *Id.* at 12 (citing *Elrod v. Burns*, 427 U.S. 347 (1976); *R.J. Reynolds

Tobacco v. U.S. Food and Drug Admin.*, 823 F.Supp.2d 36 (D.D.C. 2011)). This assertion can

only have merit if Baker can establish a First Amendment violation. Irreparable injury is not

established by "merely *alleg[ing]* the violation of First Amendment rights." *Wagner v. Taylor*,

836 F.2d 566, 576 n. 76 (D.C. Cir. 1987) (emphasis in original); *see also Chaplaincy of Full

Gospel Churches v. England ("CFGC")*, 454 F.3d 290, 301 (D.C. Cir. 2006) ("[T]his court has

construed *Elrod* to require . . . more than mere[] alleg[ations] [of] a violation of freedom of

expression in order to satisfy the irreparable injury prong of the preliminary injunction frame-

work."). Instead, the merits and irreparable injury prongs of the analysis essentially merge

---

[17] *See also, e.g., FedEx Home Delivery v. NLRB*, 563 F.3d 492, 495, 504 (D.C. Cir. 2009); *id.* at 505, 517-18 (Garland, J., dissenting in part) (faulting the regional director's exclusion of relevant evidence at the representation hearing); *Burns Electronic Sec. Services, Inc. v. NLRB*, 624 F.2d 403, 408-09 (2d Cir. 1980) (finding that the hearing officer at the pre-election hearing improperly failed to make a complete record).

[18] Of course, litigation costs do not qualify as irreparable harm. *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 735 (1998); *Myers v. Bethlehem Shipbldg. Corp.*, 303 U.S. 41, 50-52 (1938). Thus, the fact that Baker may (or may not) incur economic costs in filing its statement of position, litigating the preelection hearing, filing objections, and so on has no bearing on the appropriateness of a TRO here.

together and the "finding of irreparable injury . . . depends on an appraisal of the validity, or at least the probable validity, of the legal premise underlying the claim of right in jeopardy of impairment." *Id.* at 576 n.76. (internal quotation omitted).

As the Board will more fully explain in its brief to be filed tomorrow, Baker cannot demonstrate that it is likely to succeed on the merits of its First Amendment claims.[19] Accordingly, Baker's complaints about the new posting requirement (Mem. at 5-7), and the Rule's potential for shorter election campaigns (Mem. at 3), do not warrant issuance of injunctive relief. *See Am. Meat Inst. v. U.S. Dept. of Agriculture*, 968 F.Supp.2d 38 (D.D.C. 2013) (quoting *Edwards v. District of Columbia,* 765 F.Supp.2d 3, 19 (D.D.C. 2011) (where "'[p]laintiffs' irreparable harm argument rests entirely on their First Amendment claim,' and 'plaintiffs have not shown that the [regulation at issue] violates their rights under the First Amendment,' plaintiffs 'are not faced with irreparable harm absent the issuance of an injunction'")). The two cases cited by Baker (Mem. at 12) are not to the contrary. Rather, in each of those cases, irreparable injury was found only after the court first concluded that the movant had shown the likelihood of a First Amendment violation. *See Elrod*, 427 U.S. at 373; *R.J. Reynolds*, 823 F.Supp.2d at 49.

Even if Baker could show a likelihood of success on its First Amendment claims, this would not automatically entitle it to injunctive relief. As the D.C. Circuit has explained, "there is no *per se* rule that a violation of freedom of expression *automatically* constitutes irreparable

---

[19] In short, the Rule does not impose any restrictions on campaign speech and the possibility of a shorter election process does not in and of itself conflict with the First Amendment. 79 Fed. 74319. Furthermore, the newly required posting of the Notice of Petition for Election constitutes lawful government speech, not compelled employer speech. *See Lake Butler Apparel Co. v. Sec'y of Labor,* 519 F.2d 84, 89 (5th Cir. 1975) (rejecting First Amendment challenge to workplace posting requirement); *see also UAW-Employment & Training Corp. v. Chao*, 325 F.3d 360, 365 (D.C. Cir. 2003) ("[A]n employer's right to silence is sharply constrained in the labor context, and leaves it subject to a variety of burdens to post notices of rights and risks.").

harm." *CFGC*, 454 F.3d at 301 (emphasis in original); *cf. DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011). "Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction." *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 112-13 (1983)). Thus, Baker must still establish that the violation, even if shown, would result in the type of "irreparable harm" that warrants injunctive relief. Baker cannot satisfy this standard with respect to its "shorter election timeframe" argument because the supposed First Amendment harms are both speculative and remediable.

Baker's contention that it will not have enough time to effectively campaign (Mem. at 3) is entirely speculative at this point. There has not yet been a determination that an election will be held. If and when the Board's regional director directs an election in this case, there is no rigid timeline for when that election must occur. 79 Fed. Reg. 74318, 74422.[20] Instead, the regional director retains the discretion to set various election deadlines.[21] In fact, as stated above, the regional director in this case has already granted a 7-day postponement for the conduct of the pre-election hearing and the submission of the statement of position. (*See* Board Ex. A). The Rule also expressly allows regional directors to take into account "the desires of the parties, which may include their opportunity for meaningful speech" when scheduling the election date.

---

[20] The Rule provides that the "regional director will set the election for the earliest date practicable," 79 Fed. Reg. 74310, after taking into account case-by-case variables such as the "size, geography and complexity," of the election, *id.* at 74323, as well as "other relevant factors." *Id.* at 74324. *See also* Casehandling Manual § 11302.1 (cited in 79 Fed. Reg. 74318 n.39) (setting forth other relevant factors).

[21] For instance, a regional director may extend the Statement of Position due date for up to two business days for special circumstances and even further for extraordinary circumstances. *Id.* at 74374, 74481. Similarly, the regional director can set the hearing to open more than eight days following service of the petition based upon the complexity of the issues raised. *Id.* at 74371, 74480. And if employers show extraordinary circumstances, they may produce voter contact information more than two days after the direction of election. *Id.* at 74486.

79 Fed. Reg. 74318. In light of the discretion afforded to regional directors in scheduling various representation case matters, it is impossible to know how long the pre-election period will be in this case. Baker's concern about not having enough time to meaningfully communicate with its employees about the choice whether to be represented by a union simply reflects its fears and speculations about what may occur in the future, and is insufficient to establish the "'certain,' 'great,' and 'imminent'" type of harm necessary for issuance of injunctive relief. *Wisc. Gas*, 758 F.2d at 674. In addition, as previously discussed, if the harm Baker complains of, should it come to pass, is entirely remediable. If the union prevails in the election and Baker successfully convinces the Board or a reviewing court of appeals that the length of the election campaign period deprived it of a meaningful opportunity to speak, a new election may be ordered in which Baker will have the speech opportunities it was previously denied.

Accordingly, for all of these reasons, Baker cannot establish irreparable injury on the basis of its First Amendment allegations.

### D.   The Privacy Harms Alleged By Baker Cannot Amount to Irreparable Harm

The Rule requires employers to disclose to nonemployer parties two lists containing employee information. Prior to the pre-election hearing, an employer must include with its statement of position form a list of names, shifts, work locations, and job classifications of employees in the petitioned-for unit, as well as any other employees the employer seeks to add to the unit ("initial list"). 79 Fed. Reg. 74309. In addition, within two (2) business days of the direction of a representation election, an employer must electronically transmit to the other parties and the regional director a second list ("voter list") containing the names of eligible voters, their home addresses, work locations, shifts, job classifications and, if available to the

employer, their personal email addresses and home and cellular telephone numbers.[22] 79 Fed. Reg. 74310. The voter list will not be made publicly available, nor will it be required in every representation case. Rather, this list is required only upon satisfaction of the "showing of interest" requirement,[23] and after the employer admits that a "question of representation" exists by entering into an election agreement, or a regional director directs an election after a hearing. As shown below, Baker has failed to demonstrate that it will suffer irreparable harm by having to disclose employee contact information in the voter list.[24]

Baker has not met its burden to demonstrate that the asserted injury resulting from its disclosure in the voter list of employees' personal phone numbers and email addresses in its possession is "certain and great," *i.e.,* "actual and not theoretical." *See CFGC,* 454 F.3d at 297 (quotation omitted). Baker's claim of irreparable injury is entirely based on an incorrect premise, that the Board cannot prevent misuse of employees' private information. In fact, the Rule permits the information to be used only for "a representation proceeding, Board proceedings arising from it, and related matters," 79 Fed. Reg. 74344. And the Board explicitly cautioned that the information may not be sold to telemarketers, used in a political campaign, or to "harass, coerce, or rob employees." 79 Fed. Reg. 74358.

Baker nonetheless claims that the petitioning union will share that information with its officers and agents for organizational purposes, but will be wholly unable to control how the

---

[22] Previously, employers had seven days from the direction of election to give the regional director a list of eligible voters' names and home addresses, and that list would then be transmitted to the parties. *See Excelsior Underwear, Inc.*, 156 NLRB 1236, 1239-40 (1966).

[23] A petitioning party must provide evidence showing that the petition has the support of at least 30 percent of the bargaining unit before an election will be held. 79 Fed. Reg. 74421; *see also id.* at 74470.

[24] Neither Baker's memorandum nor Fender's affidavit makes any attempt to allege irreparable harm from release of the very limited initial list information to the union. Mem. At 11-12; Fender Affidavit at 1-2.

information is used and shared, or to reclaim the information if misuse occurs. (Mem. at 12.) As

an initial matter, these are precisely the kinds of conjectural harms, predicated on a series of

hypothetical events, that do not give rise to extraordinary injunctive relief. Moreover, Baker

ignores the incentives the Rule discusses for unions to ensure their employees and agents'

compliance with the Board's use restrictions. Although the Board noted the nearly 50-year

absence of evidence of misuse of voter contact information, 79 Fed. Reg. 74427-28, it explained

that misuse of the information could potentially result in an election being set aside, unfair labor

practice liability, or disciplinary proceedings before the Board under Section 102.177(d) of its

Rules and Regulations. These possible consequences should result in unions taking necessary

precautions to ensure compliance.

    None of the cases cited by Baker (Mem. 12) for the proposition that release of employee

contact information constitutes irreparable harm are comparable to the disclosures required here.

In *DOD v. FLRA*, 510 U.S. 487 (1994), the Court recognized that "unions have a special interest

in identifying and communicating with persons in the bargaining unit," 510 U.S. at 499-500, but

it found that federal unions' interest in disclosure of unit members' names and home addresses

did not serve the "core purpose of the FOIA, which is contribut[ing] significantly to public

understanding *of the operations or activities of the government." Id.* at 495 (quotation omitted

and emphasis in original). Similarly, in *Tribune-Review Publ'g Co. v. Bodack,* 961 A.2d 110

(Pa. 2008), the Supreme Court of Pennsylvania found no "cogent argument that the disclosure of

the telephone numbers in the requested cellular telephone bills would serve a strong public

function." 961 A. 2d at 117.[25]

---

[25] And in *Project Vote/Voting for Am., Inc. v. Long*, 275 F.R.D. 473 (E.D. Va. 2011) (Mem. 14),
the plaintiff was seeking to *publicly* disclose completed voter registration applications containing
citizens' personal information, with only social security numbers redacted. *Id.* at 474. Here, any

By contrast, the Supreme Court long ago found the requirement that names and home addresses of voters be disclosed to unions serves the public interest by furthering a key purpose of the Act: "The disclosure requirement furthers this objective [to ensure the fair and free choice of bargaining representatives] by encouraging an informed employee electorate and by allowing unions the right of access to employees that management already possesses." *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 767 (1969).[26]

In sum, Baker has failed to meet its burden in demonstrating that it will suffer "certain" irreparable injury from the compelled disclosure of employee information in either the initial list or the subsequent voter list, or from any other Rule provision of which it complains.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Baker's request for a temporary restraining order.

---

employee contact information will disclosed only to the other parties involved in the representation proceeding for limited times and purposes.

[26] A*llstate Ins. Co. v. Langston*, 655 So.2d 91 (Fla. 1995) (Mem. 12), explained that only certain types of material sought in discovery warranted immediate interlocutory review, namely information that "may reasonably cause material injury of an irreparable nature." *Id.* at 94 (quoting *Martin-Johnson, Inc. v. Savage,* 509 So.2d 1097, 1100 (Fla. 1987)). "[C]at out of the bag" material includes information that could be used "to injure another person or party outside the context of the litigation," as well as material protected by privilege, trade secrets, work product, or involving a confidential informant. *Allstate*, 655 So.2d at 94. Baker has made no showing that employee contact information falls into any of these categories.

Respectfully submitted,

DAWN L. GOLDSTEIN
KEVIN P. FLANAGAN
DIANA O. EMBREE
*Supervisory Attorneys*

PAUL A. THOMAS
MARISSA A. WAGNER
DAVID H. MORI
NINA SCHICHOR
IGOR VOLYNETS
*Attorneys*

BARBARA A. O'NEILL
*Assistant General Counsel for Contempt,*
   *Compliance, and Special Litigation*

National Labor Relations Board
1099 14th Street, NW, Suite 10700
Washington, D.C. 20570

*/s/ Nancy E. Kessler Platt*
NANCY E. KESSLER PLATT
*Deputy Assistant General Counsel*
Phone: (202) 273-2937
Fax: (202) 273-4244
E-mail: Nancy.Platt@nlrb.gov
D.C. Bar No. 425995

Dated: April 20, 2015
        Washington, D.C

19